UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK E. TOMPKINS,

                    Plaintiff,

                                                            **Hon. Hugh B. Scott**

                                                                13CV911

          v.                                                     Report
                                                                    &
                                                            Recommendation

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

          Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 14 (Plaintiff), 20 (defendant Commissioner)).

## INTRODUCTION

          The Plaintiff, Mark E. Tompkins ("Tompkins" or "Plaintiff"), brought this action

pursuant to 42 U.S.C. § 405(g) to reverse the final decision of Defendant, the Commissioner of

Social Security ("Commissioner" or "Defendant"), that Plaintiff is not disabled and, therefore,

not entitled to disability benefits under the Social Security Act. Defendant filed a motion for

judgment affirming the final decision.

## PROCEDURAL BACKGROUND

          Plaintiff filed an application for disability insurance benefits under Title II of the Social

Security Act on June 25, 2009. (R. 141-44)[1]. The claim was denied initially on February 16,

2010. (R. 83-86). Thereafter, Plaintiff then requested a hearing before an Administrative Law

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

Judge ("ALJ"). (R. 87-88). On August 3, 2011, a hearing was conducted by ALJ Bruce R.

Mazzarella at the Buffalo Office of Disability Adjudication and Review (hereinafter "ODAR"),

at which Mr. Tompkins appeared, did not testify, and requested an adjournment to obtain a legal

representative. (R. 63-70). A second hearing was held on November 23, 2011 in Buffalo, New

York, before ALJ Bruce R. Mazzarella, at which Mr. Tompkins testified and was represented by

attorney Clifford J. Falk. (R. 29-62). An impartial vocational expert, James A. Phillips, also

testified at that hearing. (R. 52-61). On March 13, 2012, the ALJ issued a decision finding that

the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 8-23).

Following this decision, the Plaintiff requested a review by the Appeals Council, which

was denied on July 10, 2013. (R. 1-6). This denial made the ALJ's decision the final decision of

the Commissioner. Plaintiff now moves this Court to reverse the Commissioner's final decision.

Plaintiff commenced this action on September 9, 2013 (Docket No. 1). The parties moved

for judgment on the pleadings (Docket Nos. 14 (Plaintiff), 20 (defendant)).  The motions were

deemed submitted by Text Order without oral argument on June 30, 2014 (Docket No. 19).

## FACTUAL BACKGROUND

Plaintiff was born on March 29, 1962 and was 49 years old at the time of the hearing.[2]

(R. 21). Plaintiff was educated through the twelfth grade. (R. 21). Prior to his claimed date of

disability, Plaintiff's employment history included medium to heavy work. From 1990 to 1994,

the Plaintiff was a manual laborer in the roofing business. (R. 156). From 1994 to 1999, he was

self-employed and did odd jobs for commercial businesses and residences. (R. 156). From 2003

to 2007, he was a residence manager at a facility that housed adult retarded citizens. (R. 156).

---

[2] Plaintiff was 45 years old when he originally applied for disability insurance benefits on the
alleged disability onset date.

He testified during the hearing with the ALJ that he lives with his wife and three children. (R. 34). He testified that he had his uncle drive him to the hearing, and that his wife prefers him not to drive. (R. 36). He also testified that he engages in the following activities: meal preparation, sweeps the floor, vacuums, occasionally does laundry, visits relatives and watches sports. (R. 47, 51). He also testified that he was able to take care of his personal needs such as dressing himself, bathing himself, and taking his own medications. (R. 48).

<u>**MEDICAL AND VOCATIONAL EVIDENCE**</u>

At the time the Plaintiff applied for disability benefits, his chief complaints were three herniated discs in his lower back, depression, and arthritis. (R. 155). When applying for benefits, Plaintiff stated that he was in pain all the time and that he couldn't lift or bend over. (R. 155). Also when applying for disability benefits, the Plaintiff stated that he had limited standing and sitting capabilities, that he had a hard time concentrating or focusing, and that he could not drive for very long. (R. 155). The Plaintiff indicated that he stopped working on October 10, 2007 due to his medical condition. (R. 155).

At his hearing, he testified that he experiences and suffers from blurry vision in his right eye, burning and throbbing pain in his back, depression, arthritis in his fingers, fasciitis, and a ganglion cyst on his ankle. (R. 40-46). He stated that he could only sit for half-an-hour to forty-five minutes before he has to get up or lay down. (R. 48). He stated he could only stand for probably half-an-hour or forty-five minutes before standing becomes a problem for him. (R. 48). He was able to lift about 15 to 20 pounds. (R. 50).

On April 10, 2008, the Plaintiff underwent an internal medicine examination by Dr. Kelley. (R. 253-56). Dr. Kelley noted that the Plaintiff stated that his major problems include depression, which he has had for a very long time, and low back pain. (R. 253). During the exam,

Dr. Kelley noted a positive straight leg test at 60 degrees bilaterally and lumbar spine extension of only 10 degrees. (R. 255). Dr. Kelley diagnosed the Plaintiff with: (1) depression; (2) a history of recurrent back pain with occasional radiorrhaphy; and (3) left inguinal herniorrhaphy and varicocelectomy. (R. 256). Dr. Kelley limited the Plaintiff's limitations to: lifting, carrying, or reaching for markedly heavy objects, repetitive bending of the L/S spine, or pushing or pulling on markedly heavy objects that may aggravate his back. (R. 256).

On January 8, 2010, the Plaintiff underwent a consultative examination by Dr. Balderman, who found similar findings on examination as Dr. Kelley, while conducting an orthopedic examination. (R. 308-10).  During the exam, Dr. Balderman noted mild to moderate left sciatica of the lumbar spine with flexion of 90 degrees, extension of 0 degrees, lateral flexion of 20 degrees, and lateral rotation of 20 degrees. (R. 309). Dr. Balderman diagnosed the Plaintiff with: (1) status post lumbar spine surgery; (2) sciatica; and (3) a history of learning disability. (R. 310). Dr. Balderman gave the Plaintiff mild to moderate limitations for bending, lifting, or prolonged standing and sitting due to his prior lumbar spine surgery and sciatic tenderness on the left. (R. 310). While Dr. Balderman did note mild to moderate sciatica, he also reported there was no spasm, scoliosis, or kyphosis. (R. 309). Straight leg raising was negative and Plaintiff had no trigger points on his thoracic or lumbar spine. (R. 309).

Based on the objective evidence and clinical examination findings, the ALJ deemed the Plaintiff's allegations without foundation of only being able to sit for 30-45 minutes or stand for 30-45 minutes; of only able to alternate sitting and standing for only one (1) hour without having to recline for one (1) hour; and walk for one-quarter hour and lift 15-20 pounds. The ALJ was unpersuaded by such evidence. (R. 19).

After careful consideration of the entire record, the ALJ concluded that Tompkins has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b). (R. 17). The ALJ noted that light work allows for breaks and meal periods and does not require prolonged sitting or standing. (R. 19). The ALJ concluded that Tompkins could sit for eight (8) hours in a workday with only normal breaks and meal periods, could sit and/or walk for eight (8) hours in a workday with only normal breaks and meal periods, he could lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently, and the Plaintiff should not frequently stoop, crouch, or kneel. (R. 17). The ALJ also concluded that because of the Plaintiff's loss of peripheral and depth vision, he should not work at loading docks and construction sites or work where depth vision is necessary. (R. 17). The ALJ further concluded that the Plaintiff should be limited to a low-contact, low-stress work environment. (R. 17).

The ALJ posed two hypothetical questions to vocational expert, James A. Phillips. The first hypothetical gave full credit to the Plaintiff's testimony and assumed that the individual could sit for thirty to forty-minutes, stand for forty-five minutes but only alternate sitting and standing for one hour before having to recline or lie down for an hour, walk one-quarter mile, and lift up to 15 to 20 pounds. (R. 56). The vocational expert reasoned that if those were the findings, that hypothetical individual would not be able to perform the Plaintiff's past work because he would not have the capacity. (R. 56). The vocational expert further found that such a hypothetical individual would not be able to perform any work. (R. 56).

The second hypothetical assumed an individual of similar age, experience, and condition as Plaintiff—someone with a similar vocational profile as that of the Plaintiff—with limitations found to be the Plaintiff's RFC. (R. 17, 56). The ALJ asked the vocational expert to assume that the hypothetical individual could sit for an eight hour work day with only normal breaks and

meal periods and lift and carry 20 pounds occasionally and 10 pounds frequently. (R. 56). The

ALJ asked the vocational expert to assume that the hypothetical individual should not frequently

stoop, crouch or kneel. (R. 56). The ALJ asked the vocational expert to assume that the

hypothetical individual because of a loss of peripheral vision, and depth vision, is not suited for

work where his real vision is required such as loading docks or construction sites, or would not

be suited for work wherein depth of vision is necessary. (R. 56). The ALJ asked the vocational

expert to assume that the hypothetical individual is limited to a low contact, and a low stress

work environment. (R. 56). The vocational expert found that if those were the findings, that

hypothetical individual would not be able to perform any of the Plaintiff's past work because the

hypothetical individual would not have the capacity. (R. 57). The hypothetical individual would

not have the capacity because of the stress levels, the contact with others, the supervisory roles,

and also the weights would take the hypothetical individual out of the light level. (R. 57). The

vocational expert explained that the hypothetical individual would be able to perform two light

jobs: line packer (DOT number 753.687-038) and inspector packer (DOT number 784.687-042).

(R. 57). The vocational expert also explained that the hypothetical individual would also be able

to perform in a sedentary job as a lock assembler (DOT number 726.684-074). (R. 58).

Plaintiff's counsel then asked questions to the vocational expert, modifying the facts of

the second hypothetical. Plaintiff's counsel asked if that hypothetical individual could not, or had

insufficient fine motor skills to deal with moving around small objects with precision, would that

preclude him from doing any work. (R. 59). The vocational expert concluded that it generally

takes people out of the sedentary work because of fine precision in the light levels. (R. 59). The

vocational expert also concluded that if the hypothetical individual couldn't grasp, but if they

had no fine finger, or limitations on fingering it would take them out of the kinds of assemblers

found in the light levels. (R. 59).  Plaintiff's counsel then asked the vocational expert how many

days a month someone is generally allowed to miss work when they are doing unskilled work.

(R. 60). The vocational expert said that generally in the first six months one would not have any

paid time off or any personal time off, so the hypothetical individual would really need to be

there. (R. 60). The vocational expert said the hypothetical individual might miss one day, and

still keep the job, but if it were a habitual problem and the hypothetical individual was losing day

a week then the hypothetical individual would never be able to keep the job. (R. 60-61).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that Plaintiff

was not disabled is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v.

Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "more than a mere

scintilla … such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co.

v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

## I.     Legal Standard

For purposes of Social Security disability insurance benefits, a person is disabled

when he or she is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment, which can be expected to result in death, or which

has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's physical or mental

impairment or impairments are of such severity that he or she is not only unable to do [his or her]

previous work but cannot, considering his or her age, education, and work experience, engage in
any other kind of substantial gainful work that exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

An impairment is severe if it "significantly limits the claimant's ability to do basic work
activities." 20 C.F.R. § 404.1520(c). The Plaintiff bears the initial burden of showing that an
impairment prevents him or her from returning to his or her previous type of employment. Berry
v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, the burden
shifts to the [Commissioner] to prove the existence of alternative substantial gainful work that
exists in the national economy and which the Plaintiff could perform. Id.; see also Dumas v.
Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir.
1980).

To determine whether the Plaintiff is suffering from a disability, the ALJ must employ a
five-step inquiry:

>  (1) whether the Plaintiff is currently working;
>
>  (2) whether the Plaintiff suffers from a severe impairment;
>
>  (3) whether the impairment is listed in Appendix 1 of the relevant
>  regulations;
>
>  (4) whether the impairment prevents the Plaintiff from continuing
>  her past relevant work; and
>
>  (5) whether the impairment prevents the Plaintiff from doing any
>  kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a Plaintiff is found to be
either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the

record.  <u>Williams v. Colvin</u>, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015).

In order to determine whether an admitted impairment prevents a claimant from

performing his or her past work, the ALJ is required to review the Plaintiff's residual functional

capacity and the physical and mental demands of the work he or she has done in the past.

20 C.F.R. §§ 404.1520(e) & 416.920(e).  The ALJ must then determine the individual's ability to

return to his or her past relevant work given his or her residual functional capacity.  <u>Washington</u>,

<u>supra</u>, 37 F.3d at 1442.

## II.   <u>Application</u>

In this instant case, the issues are whether substantial evidence supports the ALJ's

findings that the Plaintiff's lumbar disc injury and lumbar radiculopathy are not severe

impairments; whether the ALJ applied the appropriate standard in determining Plaintiff's RFC;

and whether the vocational expert's testimony is supported by substantial evidence.

### A.  Severity of Plaintiff's Impairments

The ALJ found that the Plaintiff had the following severe impairments: back discomfort

with obesity, right Achilles tendinosis, left eyelid injury with surgery, and depression. (R. 14).

Plaintiff argues that the Commissioner erred in failing to find lumbar disc injury and lumbar

radiculopathy to be severe impairments (Docket No. 14, Pl. Memo. at 13), with the

Commissioner responding that the ALJ clearly incorporated all of the Plaintiff's back

impairments by finding that Plaintiff's back discomfort was a severe impairment. (Docket No.

28, Def. Reply Memo. at 18).

It is well established that an ALJ is not required to "reconcile every shred of evidence".

<u>Dunaway ex rel. E.B. v. Colvin</u>, 2015 U.S. Dist. LEXIS 133390, at *43 (W.D.N.Y. Sept. 29,

2015). Where the Court can glean the rationale of an ALJ's decision from the evidence of record, it is not necessary for the ALJ to report every piece of medical evidence contained in the record. Greene v. Colvin, 936 F. Supp. 2d 216, 225-26 (N.D.N.Y. 2013), citing Mongeur v. Heckler, 722 F. 2d 1033, 1040 (2d Cir. 1983) (per curiam) ("it is not required that the ALJ mention every piece of evidence presented to him or explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); see also Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting the proposition that the hearing officer must explicitly discuss every piece of conflicting testimony).

While the Plaintiff argues that the ALJ omitted significant portions of the evidence, the Court disagrees. (Docket No. 14, Pl. Memo. at 19). Here, the ALJ considered Plaintiff's lumbar disc injury when he specifically noted at step 2 that Plaintiff experienced back discomfort and was status post lumbar spine surgery. (R. 14, 18). The ALJ's decision provides a review of the Plaintiff's treating physicians findings and the treatment that the Plaintiff received for his back discomfort. (R. 18-19). Specifically, the Plaintiff stated to Dr. Kelley that an MRI demonstrated that he still has a disc that was not repaired and that he experiences occasional left leg radiculopathy and pain. (R. 18). Dr. Kelley disclosed that the Plaintiff stated to her ". . . that the pain actually tends to bother him mostly in the morning and if he does not overexert himself he is usually okay." (R. 18-19). In addition, Dr. Yu revealed that the course of treatment for the Plaintiff's back discomfort consisted of physical therapy with heat, massage and ultrasound. (R. 19). On April 10, 2008, Dr. Kelley substantiated that the Plaintiff could fully squat and used no assistive device and needed no help to change for the exam or to get on or off the examination table. (R. 19). He was able to rise from a chair without difficulty. (R. 19). Dr. Kelley found that

Plaintiff could fully flex his back and extend to 10 degrees and that there was a full range of motion of his upper and lower extremities. (R. 19).

In addition to considering the medical records of the Plaintiff, the ALJ also weighed the testimony of the Plaintiff from the hearing that occurred on November 23, 2011. The ALJ in his decision notes that, "the claimant testified that he has back pain and just received shots since calendar year 2000 when he underwent surgery . . . . The claimant testified that he experiences a back pain rating of a 5-pain rating to a 7-pain rating, with a 10-pain rating representing the highest level of pain possible. The claimant's primary care physician, Dr. Nathan, prescribes him Hydrocodone and he takes over the counter Tylenol. The claimant testified that his back pain reduces to a 5-pain rating with the use of Hydrocodone and rest. He disclosed that sometimes his low back pain radiates down his right leg. He needs no assistance with walking despite allegations of low back pain and right Achilles/foot problems and has not undergone physical therapy." (R. 18).

All of this evidence is "more than a mere scintilla" and thus substantial evidence supports the ALJ's finding that the Plaintiff's lumbar disc injury and lumbar radiculopathy are not severe impairments. (See R. 18-19). The record contains substantial evidence to support the ALJ's finding that Plaintiff's claims of lumbar disc injury and lumbar radiculopathy are not severe impairments because the medical record does not support that these are severe impairments nor does either affect the Plaintiff's ability to perform basic work activities. Thus, this Court is unpersuaded by the Plaintiff's argument that the ALJ omitted significant portions of the evidence. The ALJ did not have to mention every piece of evidence presented to him nor did he have to explain why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.

**B. Residual Functional Capacity and Whether the Findings of the Vocational Expert Were Supported by Substantial Evidence**

Substantial evidence supports the ALJ's findings of Plaintiff's RFC. (R. 17-21). Plaintiff argues that the ALJ did not properly weigh Dr. Balderman's diagnosis of sciatica and Dr. Kelley's diagnosis of lumbar radiculopathy because he only engaged in some selective analysis of other medical source opinions regarding mental limitations. (Docket No. 14, Pl. Memo. at 11). Contrary to Plaintiff's argument, there is evidence in the record that the ALJ explicitly included in his analysis that Dr. Kelley reported Plaintiff's complaints of left leg radiculopathy (R. 18) and that Dr. Balderman diagnosed sciatic tenderness on the left. (R. 19). This Court finds that there is substantial evidence that the ALJ clearly evaluated both opinions and examinations as a whole (See R. 18-19).

Plaintiff argues that the ALJ's RFC assessment did not include Dr. Kelley's limitation that Plaintiff could not perform repetitive bending. (Docket No. 14, Pl. Memo. at 11-12). The ALJ provided a limitation against frequent stooping, kneeling, or crouching, and thus incorporated Plaintiff's inability to bend repetitively in his RFC assessment. (R. 56). As explained by SSR 83-10 and 85-15, most light jobs require only occasional stooping. SSR 83-10; SSR 85-15 ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact.").

Plaintiff also argues that that Dr. Balderman opined mild to moderate limitation in bending, lifting, prolonged standing, and prolonged sitting, but it is unclear that these limitations are in the RFC assessment.  (Docket No. 14, Pl. Memo. at 18). As explained in 20 C.F.R. § 404.1545, limitations are considered by the ALJ in determining a Plaintiff's RFC. An ALJ is not required to explicitly list each alleged limitation in his RFC assessment. Plaintiff's argument is unpersuasive because in assessing the Plaintiff's RFC, the ALJ did not need to recite all of the

Plaintiff's limitations as suggested by the Plaintiff. <u>See</u> 20 C.F.R. § 404.1545(a)(1) ("Your

residual functional capacity is the most you can still do despite your limitations.). Moreover,

Plaintiff's mild to moderate limitation in prolonged sitting and standing is accommodated by the

ALJ's limitation to light work as well as normal work breaks. <u>See</u> SSR 83-12 ("Persons who can

adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would

still be able to perform a defined range of work.").

     "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an

independent judgment, in light of medical findings and other evidence regarding the true extent

of the pain alleged by the claimant." <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979). The

ALJ did not find that the Plaintiff's allegations of total disability as well as his assertions

concerning the intensity, persistence, and limiting effects of these symptoms to be consistent

with the record as a whole. (R. 21). In determining the Plaintiff's RFC, the ALJ considered the

entire record. The ALJ noted that the Plaintiff helps around the house, helps to care for his

children, does some meal preparation, and will sweep and vacuum and do the laundry "now and

then." (R. 21). The ALJ reasoned that the Plaintiff's assertions of his limitations and daily

activities as revealed on his completed Activities of Daily Living report are also consistent with

his assessed RFC for a limited range of light work. (R. 21). The ALJ based his RFC on the

medical evidence, as was his duty at the hearing level, and then looked to the vocational expert

to determine what jobs Plaintiff could perform. 20 C.F.R. § 404.1546(c).

     A vocational expert is used to assist the ALJ in determining what jobs Plaintiff can

perform based on the RFC, not to determine the RFC. SSR 83-14, <u>see</u> 20 C.F.R.

§ 404.1560(b)(2). An ALJ may take testimony from a vocational expert to obtain evidence

needed to determine whether the claimant can still perform his past relevant work. 20 C.F.R.

§ 404.1560(b)(2). However, the ultimate determination of a claimant's RFC is an issue reserved

to the Commissioner. See Knight v. Astrue, 2011 U.S. Dist. LEXIS 103103, at *8 (E.D.N.Y.

Sept. 13, 2011) ("The ultimate determinations of a claimant's RFC or disability are reserved to

the Commissioner."); 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding these

issues [including RFC] is reserved to the Commissioner.").

     In order for the ALJ to consider the vocational expert's testimony, the posed hypothetical

must accurately portray the claimant's individual impairments. McAuliffe v. Barnhart, 571 F.

Supp. 2d 400, 405 (W.D.N.Y. 2008); see also Sanchez v. Barnhart, 329 F. Supp. 2d 445, 449

(S.D.N.Y. 2004) (reasoning that an ALJ must pose hypothetical questions to the vocational

expert which "reflect the full extent of the claimant's capabilities and impairments" to provide a

sounds basis for the vocational expert's testimony).  In posing a hypothetical to a vocational

expert, there must be substantial evidence to support the assumption upon which the vocational

expert bases his or her opinion. See Dumas, 712 F.2d at 1554.

     The RFC posed to the vocational expert in the second hypothetical (R. 56-57) and the

ALJ's findings are based upon the expert's answer regarding that second hypothetical. The ALJ

is proper in his consideration of the vocational expert's testimony because the posed hypothetical

accurately portrayed the Plaintiff's individual impairments. Dr. Kelley limited the Plaintiff's

limitations to: lifting, carrying, or reaching for markedly heavy objects, repetitive bending of the

L/S spine, or pushing or pulling on markedly heavy objects may aggravate his back. (R. 256).

Dr. Balderman limited the Plaintiff's limitations to: mild to moderate limitation in bending,

lifting, prolonged standing, and prolonged sitting due to previous lumbar spine surgery and

sciatic tenderness on he left. (R. 310). The second hypothetical that was posed to the vocational

expert "reflect[ed] the full extent of the claimant's capabilities and impairments". See  Sanchez,

329 F. Supp. 2d. at 449. The evidence supports the ALJ's finding that the Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b).

On this appeal, Plaintiff challenges the hypotheticals that the ALJ submitted to the vocational expert. The hypotheticals are set forth in the record at 54-58. Plaintiff's counsel questioned the vocational expert at the hearing before the ALJ (R. 59-61), but the record is silent as to any objection that counsel had to the hypotheticals posed to the vocational expert. The hypotheticals posed were accurate and there was full development of the record with the vocational expert before the ALJ. Moreover, the second hypothetical question posed to the vocational expert accurately reflected the Plaintiff's vocational profile and RFC. Based on the testimony, substantial evidence supports the ALJ's finding that there was work in the national economy that someone afflicted, like Plaintiff, could perform, given his RFC and his other vocational factors.

## CONCLUSION

For the foregoing reasons, the Court recommends that the decision of the Commissioner's motion for judgment on the pleadings (Docket No. 20) be **granted**, and that the Plaintiff's motion (Docket No. 14) for similar relief be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a)(3). Failure to file objections to this Report & Recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent District Court's

Order adopting the recommendations contained therein. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985);

<u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d

55 (2d Cir. 1988).

      The District Court on *de novo* review will ordinarily refuse to consider arguments, case

law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale

Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

      Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3),

"written objections shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3) may

result in the District Court's refusal to consider the objection.

      SO ORDERED.

                                 /s/ *Hugh B. Scott*
                                Honorable Hugh B. Scott
                                United States Magistrate Judge

Buffalo, New York
December 23, 2015